## WILLIAM POTTS v. WILLIAM JONES.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 26, 1891—Decided February 16, 1891.

In trover for the conversion of a horse, where an issue is raised by the testimony as to whether the plaintiff had traded his horse to the defendant or not, an instruction, that " plaintiff is not entitled to rescind the trade and reclaim the horse, unless defendant perpetrated a fraud upon him," would be error, the point assuming the question of fact in dispute.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 169 July Term 1890, Sup. Ct.; court below, No. 156 March Term 1871, Old D. C.

In March, 1871, William Potts recovered a judgment for $100 and costs against William Jones, in an action of trover and conversion brought before an alderman, when the defendant entered an appeal. Issue.

At the trial on March 30, 1890, the plaintiff testified as follows: " My business place was in South-Second street market, near Pine street. I had a horse and wagon at that time ; kept it on the west side of the market house. The defendant kept a commission store; I was buying a good deal of stuff from him. On Saturday, March 3, 1871, I had occasion to go over to his water-closet. Defendant said, ' Do you want to buy a horse ? ' I said, ' No, I might trade horses.' I looked into the defendant's stable and I saw the defendant's horse. I said, ' I

Statement of Facts.

will trade with you, if the horse is all right.' I did not examine the horse. I then left and went away for some time. When I came back to where my horse was standing, I found a blind horse in my wagon in place of my own; a man named Mount was gearing him up. I said to Mount, ' Take that horse out of there; I did not want a blind horse.' Mr. Jones came over laughing, and said, ' Take him away and try him; if he is not all right, bring him back and I will take him back.' I said, ' He is not all right.' This all took place on Saturday afternoon after three o'clock, and the orders were to clear the stalls at three o'clock. I kept the horse till Monday; my man drove him in my wagon home to my place. I kept him till Monday. He was home in my stable till Monday. David O'Gorman, my man, drove him to my home; he would never have got there if I had to drive him. I could not drive him, as he was no good to me; not worth one cent. On Monday morning, I told O'Gorman to take him back and get my horse. He must have taken him. I didn't go with him to see. I never got my horse back; neither of the horses, nor money either. Jones never offered to pay me."

In his case in chief, the defendant testified: " In 1871, Mr. Potts spoke to me about trading horses. Mr. Graham and I went to look at Potts' horses across the street. Potts came over after that to my store; we went together back into my stable to look at my horse. Potts went into the stall and looked at my horse; we then agreed to trade and consummated it there; we were to trade even. I do not remember that Potts was to give me $9.00 in cash. I know we traded, and I said to Potts that if neither horse was worth a dollar, there was to be no squealing. Potts said he would not squeal. I then told Mr. Mount to take my horse over and to get Potts'. I did not go over myself. On Monday morning, Potts sent back the horse he got from me; he did not come to me and explain why he sent it back, nor did he or any one ever ask me to return the Potts horse. After the blind horse came back, I notified Potts to come and take it away or I would send it to public auction. I sent him notice in writing that I would have it sold for his account at the bazaar. I had the horse sold; it was entered at the horse bazaar, Ninth and Sansom streets, and sold publicly for $54; it netted about $44,

Opinion of the Court.

which I took over and offered to Potts in Mr. Graham's presence. Potts refused to take it. This was after he had sued me. I said if Potts would treat, I would give him back the horse I got."

At the close of the testimony on both sides, the court submitted the cause to the jury, answering certain points for instruction, presented by the defendant, as follows:

4. The plaintiff is not entitled to rescind the trade and reclaim his horse, unless defendant perpetrated a fraud upon him. You must find, therefore, that defendant was guilty of some unlawful artifice or trick, and practiced a deceit, which induced plaintiff to act in making the trade. If there was no fraud, no deceit, then title to the horse lawfully passed to defendant, and plaintiff cannot recover.

Answer: I decline this point; that is a question for you.[1]

7. Your verdict, under the evidence, should be for the defendant.

Answer: I decline that.[2]

—The jury returned a verdict for the plaintiff for $100. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1, 2. The answers to the defendant's points.[1] [2]

*Mr. W. H. Peace*, for the appellant.

That there was no fraud, but simply a breach of warranty, and therefore trover would not lie, counsel cited: Smith v. Smith, 21 Pa. 367; Harris v. Smith, 3 S. & R. 23; Backentoss v. Speicher, 31 Pa. 326; Logan v. Smith, 8 W. N. 102; Welsh v. Bell, 32 Pa. 17. And there was no prior demand for the horse proved: Taylor v. Hanlon, 103 Pa. 504.

*Mr. Andrew J. Maloney*, for the appellee.

PER CURIAM:

Complaint is made that the court below refused to instruct the jury, as requested by the defendant's fourth point, that " The plaintiff is not entitled to rescind the trade and reclaim the horse, unless defendant perpetrated a fraud upon him." The vice of this point is that it assumed the disputed facts in the case. The plaintiff's contention was that there was no trade, and he gave evidence in support of it. This question

of fact is ignored in the point.   The only other assignment is
that the court declined to give a binding instruction in favor
of the defendant.   This the court could not have done, under
the evidence.   The case was properly submitted to the jury.

Judgment affirmed.